VOCATIONAL SERVICES, INC., A Missouri Not–For–Profit Corporation, Appellant–Respondent,

v.

THE DEVELOPMENTAL DISABILITIES RESOURCE BOARD, Respondent–Appellant,

Lighthouse Preschool, Inc., A Missouri Not–For–Profit Corporation, Respondent.

Nos. WD 56186, WD 56231.

Missouri Court of Appeals, Western District.

Nov. 23, 1999.

John B. Reddoch, II, Liberty, for appellant/respondent.

Jon M. Krebbs, Liberty, for respondent/appellant.

Gary K. Patton, Liberty, for respondent.

Before Presiding Judge HAROLD L. LOWENSTEIN, Judge FOREST W. HANNA[1] and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

The Developmental Disabilities Resource Board (DDRB) has the authority to distribute Clay County tax funds, collected pursuant to Section 205.968–205.972 RSMo 1994 & RSMo Cum.Supp.1995, to sheltered workshops, residence facilities, and related services for the care or employment, or both, of the handicapped. Vocational Services Inc. (VSI) filed suit for declaratory judgment and injunctive relief, requesting that the trial court prevent the DDRB from further funding of programs for the handicapped provided by entities which are not sheltered workshops or residence

---

1. Judge Forest W. Hanna took senior status between the date this case was submitted and the date of this opinion.

facilities. At trial, Judge David W. Russell declared the extent of the authority of the DDRB to distribute the tax funds for the handicapped was limited by Section 205.968's phrase "related services." Judge Russell interpreted the phrase "related services" to include entities which provide acts or commodities which are connected or associated with vocational training, vocational teaching, vocational activities, vocational workshops or actual residential facilities for the care or employment of handicapped persons, even if the entities are not themselves sheltered workshops or residence facilities, and refused to enjoin distribution of tax funds to these entities. Judge Russell did enjoin the DDRB from distributing tax levy funds to entities which fall outside the statutory parameters, even if they provide other care of the handicapped. VSI appeals so much of the decision as allows distribution of funds to entities other than sheltered workshops and residence facilities. The DDRB appeals so much of the decision as requires programs to be connected with vocational training, teaching or activities. Intervenor Lighthouse Preschool supports the DDRB's interpretation of the statute, although it was not in fact harmed by the decision below.

Finding no error in the trial court's interpretation and application of the statute in either respect, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

At trial, the parties stipulated to the following facts:

In 1969, the Missouri Legislature enacted Sections 205.968–205.972 to address the establishment and operation of county sheltered workshops. This legislation authorized the county court of any county in Missouri to establish a sheltered workshop and residence facility for the care and employment of post-school handicapped persons. Section 205.971 permitted the county court, upon approval by a majority of the qualified voters of the county, to "levy and collect a tax not to exceed two mills per dollar of assessed valuation upon all taxable property within the county for the purpose of establishing and maintaining the county sheltered workshop and residence facility." Sec. 205.971 RSMo 1969.

In the Spring of 1971, pursuant to the above statutes, the Clay County voters approved a tax levy for the county to establish and maintain a sheltered workshop and residence facility. At this time, the county also created the Developmental Disabilities Review Board, or DDRB, as the Clay County Sheltered Facilities Board, to distribute the funds collected through the county tax. Pursuant to Sections 205.968–205.972, the DDRB was given exclusive control over the revenues collected under the tax levy and the statutory authority to spend the funds in accordance with the purposes set out in the statute.

In 1984, Section 205.968 was amended to expand the scope of activities permitted to be funded. As amended, the statute permitted a county to establish a sheltered workshop, residence facility, *"or related services, or any combination of any such sheltered workshops, residence facilities, or related services, for the care or employment, or both, of handicapped persons."* Sec. 205.968.1 RSMo 1984 (emphasis added). The 1984 amendments further provided:

> Notwithstanding any provision of law to the contrary, and irrespective of whether or not a county sheltered workshop or residence facility has been established, *the board may contract with any not for profit corporation for such corporation to provide services relating in whole or in part to the services which the board itself may provide to handicapped persons as defined in this law and for such purpose may expend the tax funds or other funds.*

Sec. 205.970.3 RSMo 1984 (emphasis added).

On February 7, 1989, the Clay County voters approved an increase in its existing tax to maintain sheltered workshops and residence facilities for handicapped persons. In 1993, the first sentence of Section 205.968 was further amended to state, "The board of directors shall be a legal entity empowered to establish and/or operate a sheltered workshop as defined in section 178.900, RSMo, residence facilities, or related services, for the care or employment, or both, of handicapped persons."

Beginning with the amendment of the statute in 1984, the DDRB expanded its funding to include both sheltered workshops and residence facilities, and programs which it believed fell within the parameters of the statutory term "related services" because they provided services for the care or employment of handicapped persons, although they were not themselves sheltered workshops or residence facilities. Since 1993, the DDRB has distributed tax funds in excess of one million dollars per year. The recipients have included VSI and Concerned Care, Inc. (CCI), a residence facility. The recipients have also included Intervenor Lighthouse Preschool; Clay County Respite; College Education Experience for Adults with Developmental Disabilities (CEADD); Missouri Special Olympics; Missouri Parents Act (MPACT); Metropolitan Organization to Counter Sexual Assault (MOSCA); Developmental Work Activity Association (DWAA); Missouri Family Trust; Jewish Vocational Services; Della Lamb Community Services; United Cerebral Palsy of Greater Kansas City; and Parent Consumer Training Program (Parent/Cons).

On May 24, 1996, VSI brought an action for declaratory judgment and injunctive relief against the DDRB, requesting the court to declare public tax funds collected pursuant to Section 205.968–205.968 can be spent, granted or contracted solely for the benefit of sheltered workshops or residential facilities, or for services *directly* related to the running of sheltered workshops and residential facilities. It also requested the court to declare that, of those receiving funds from the DDRB, only it and CCI meet this definition of a sheltered workshop, residence facility, or related service provider, and to enter an order enjoining all other expenditures of tax funds by the DDRB as unlawful.

Lighthouse Preschool filed a motion to intervene as a matter of right, or in the alternative, for permissive intervention. Neither VSI nor the DDRB filed objections to the motion, and the court granted Lighthouse permission to intervene, without identifying in which capacity it granted Lighthouse's motion.

On June 6, 1998, the trial court entered an order in which it noted that the statute permits the DDRB to spend tax levy funds only for sheltered workshops, residential facilities and "related services" for the care or employment of the handicapped. The trial court did not completely agree with either party, however, as to how the statutory phrase "related services" should be defined. The court rejected both VSI's claim that only a sheltered workshop or residential facility qualify for the funds, and the DDRB and Lighthouse's claim that any services related to the care or employment of the handicapped qualify for the funds. The court concluded that sheltered workshops, residential facilities, and related services for the care or employment of the handicapped include, "acts or commodities which are connected or associated with vocational training, vocational teaching, vocational activities, vocational workshop and/or residential facilities."

In applying this definition, the court determined that VSI and CCI, without dispute, qualify for funds. The court found that the services and activities provided by Jewish Vocational Services, Della Lamb Community Services, and Missouri Family Trust fall fully within the parameters of the statute and refused to enjoin the DDRB from funding them. Specifically, those services which it found the DDRB could fund include employment training and readiness programs and services run

by Jewish Vocational Services, Della Lamb's transportation of the handicapped to and from a sheltered workshop and/or residence facility, and payments to the Missouri Family Trust on behalf of recipients who live in residence facilities in Clay County to help administer the Medicaid Program.

The court also found that some of the programs provided by Lighthouse, D.W.A.A. and Maple Woods Community College fall within the funding parameters of the statute to the extent they provide for vocational training, teaching and activities for developmentally disabled children. The court determined it was not appropriate for it to micromanage the disbursement of funds by specifying specific programs which could or could not be funded by these three agencies, and left this designation to the DDRB's judgment under the guidelines established by the court.

Finally, the court enjoined the DDRB from further funding MOSCA, MPACT, Parent/Cons, Missouri Special Olympics, Life Care Planning, and Respite Care, concluding their services did not fall within the meaning of sheltered workshops, residential facilities, or related services as required by Section 205.968. Specifically, it enjoined funding of MOSCA's programs aimed at providing sexuality education, training and sexual abuse prevention for persons with developmental disabilities; MPACT's training and assistance to parents of children with disabilities; Parent/Cons's registration fee assistance program to help parents of disabled children attend workshops and seminars addressing problems of the developmentally disabled; Missouri Special Olympics' year round athletic training and competition opportunities for children and adults with mental retardation; Life Care Planning's program to assist families with developmentally disabled children develop a long term plan for their child; and Respite Care's program for providing temporary relief to families with children who have developmental dis-

abilities, permitting them to enjoy time away from their children.

On July 8, 1998, the DDRB filed a Petition seeking a writ of prohibition to prohibit the trial judge from enforcing the injunction contained in the June 6, 1998 judgment. We denied the Petition. On August 3, 1998, the DDRB appealed the trial court's judgment, and on August 11, 1998, VSI cross-appealed.

## II. STANDARD OF REVIEW

When reviewing a declaratory judgment, our standard of review is the same as in any other court-tried case. *McDermott v. Carnahan,* 934 S.W.2d 285, 287 (Mo. banc 1996). We will affirm factual determinations of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or, unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We review legal determinations *de novo. Barry Serv. Agency Co. v. Manning,* 891 S.W.2d 882, 887 (Mo.App. 1995). We will affirm the trial court's grant of an injunction unless a review of the evidence leaves the court with a definite and firm conviction that a mistake has been committed. Rule 73.01(c); *Herbik v. Rand,* 732 S.W.2d 232, 234 (Mo.App.1987).

## III. EXTENT OF AUTHORITY OF THE DDRB TO FUND RELATED SERVICES

■ In its first point on appeal, the DDRB asserts the trial court too narrowly interpreted the meaning of the phrase "or related services" in holding that Section 205.968.1 permits the DDRB to fund only acts or commodities connected to or associated with vocational training, vocational teaching, vocational activities, vocational workshops and/or actual residential facilities, and that, properly interpreted, the statute also permits the DDRB, in its discretion, to fund other programs that provide services for the care or employment of handicapped persons.

In its cross-appeal, VSI argues, conversely, that the trial court's definition of "related services" is too broad. Instead, VSI urges, the court should have ruled that the use of "related services" in Section 205.968.1 was simply intended to permit the DDRB to fund services which support or are directly connected to programs run by such sheltered workshops and residential facilities, such as transportation to the workshops and testing for qualification for entry into the workshops or facilities. VSI argues the statute was not intended to allow the DDRB and similar Boards to fund programs which are not directly connected with a sheltered workshop or a residential facility itself.

■■■ The term "related services" is not defined in Section 205.968, or in any Missouri statute. In interpreting its meaning as used in the statute, we must keep in mind the primary role of statutory construction, which is to determine the intent of the legislature. If the legislature's intent is plain and clear to a person of ordinary intelligence from the language of the statute itself, then we must interpret and apply it as written and there is no room for construction. *State of Kansas, Secretary of SRS v. Briggs*, 925 S.W.2d 892, 895 (Mo.App.1996); *Wheeler v. Board of Police Comm'rs of Kansas City*, 918 S.W.2d 800, 803 (Mo.App.1996). If the language is ambiguous or leads to an illogical result, however, then we must look past its plain language and construe it with other statutes, and in light of other principles of statutory construction, in order to determine its meaning. *Wheeler*, 918 S.W.2d at 803.

We cannot determine the meaning of "related services" as used in the statute without first determining what the statute requires the services to be "related" to. VSI argues that the syntax and use of commas in the relevant portion of the statute requires that the services be related to sheltered workshops or residence facilities, while the DDRB and Lighthouse argue that the syntax and use of commas re-

quires only that the services be related to the care or employment of handicapped persons. The language in question states:

> The board of directors shall be a legal entity empowered to establish and/or operate a sheltered workshop as defined in section 178.900, RSMo, residence facility, or related services, for the care or employment, or both, of handicapped persons.

Sec. 205.968.1 RSMo Cum.Supp.1995.

■■■ Most basically, we note that, looking logically at the statute and applying common sense to its interpretation, we cannot accept the DDRB's interpretation of the statute without effectively reading the word "related" out of the statute. For, if the legislature intended the statute to authorize any types of services intended to employ or care for the handicapped, then it could have said "sheltered workshops, residence facilities, or services for the care or employment, or both, of the handicapped." The legislature did not so state, however. To the contrary, it limited the word "services" by use of the word "related." The question thus arises, related to what? If the legislature meant related to the care or employment of the handicapped, as the DDRB asserts, then "related" was mere surplusage, for services for the care or employment of the handicapped are by definition services related to the care or employment of the handicapped. This reading goes against the principles of statutory construction that each word, clause, sentence, and section of a statute should be given meaning. *See State v. Mack*, 903 S.W.2d 623, 631 (Mo. App.1995). Thus, the word "related" must refer to something else in the sentence, most logically that which preceded it, to wit, sheltered workshops and residence facilities.

■■■ Other guiding principles of statutory construction lead to this same result. As Judge Russell noted in his decision below, under the principle of *ejusdem generis*, "where general words follow specific

words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Alumax Foils, Inc. v. City of St. Louis*, 959 S.W.2d 836, 838 (Mo.App.1997). The phrase "related services" is a general phrase and under this rule must thus be construed to refer back to the subjects set out in the preceding words – sheltered workshops and residential facilities for the care or employment or both of handicapped persons.

This reading of the statute also comports with the punctuation in the statute. The legislative authors of the statute placed a comma after the words "sheltered workshop as defined in Section 178.900, RSMo," after "residence facility," and after "or related services," and then added the qualifying phrase "for the care or employment, or both, of handicapped persons." This phrasing indicates that the phrase "for the care or employment, or both, of handicapped persons," is to modify all three listed types of services – sheltered workshops, residence facilities, and related services. It was not just intended to modify the term related services.

For these reasons, we reject the DDRB's assertion that the term related services was intended only to limit the DDRB to funding any type of service related to the care or employment of handicapped persons, and find it must have been intended to limit it to funding services related to the services provided by sheltered workshops and residential facilities.

■ On the other hand, we also reject VSI's argument that only services which *support* sheltered workshops and residence facilities or which are otherwise *directly* related to such workshops or facilities can be funded by the DDRB. Just as the DDRB is incorrect in asking us to effectively ignore use of the word "related" in interpreting the meaning of the statute, so VSI is incorrect in asking us to effectively add the word "directly" to the phrase "related services." Courts should

not add provisions to a statute under the pretense of statutory construction if the provisions "are not plainly written or necessarily implied" from the words used. *Coastal Mart, Inc. v. Dept. of Natural Resources of State of Mo.*, 933 S.W.2d 947, 956 (Mo.App.1996). Nothing in the statute suggests that the services must be directly related to or directly supportive of the operation of a sheltered workshop or residence facility. Rather, the language contained in Section 205.970.3 suggests just to the contrary. As quoted above, that language states:

> Notwithstanding any provision of law to the contrary, and irrespective of whether or not a county sheltered workshop or residence facility has been established, the board may contract to provide services relating in whole or in part to the services which the board may provide to handicapped persons as defined in this law and for such purpose may expend tax funds or other funds.

Sec. 205.970.3 RSMo 1994.

This section makes it clear that a Board may fund services provided by any not-for-profit corporation as long as they are the type of service which the statute authorizes the Board to provide for the handicapped. It can do this whether or not the county in question has a sheltered workshop or residence facility. And, the statute specifically states that the existence of a sheltered workshop or residence facility is not a prerequisite to funding of such services. In fact, even if there is such a sheltered workshop or residence facility, the Board is specifically authorized to nonetheless fund any not-for-profit corporation to provide any or all of the types of services which the statute authorizes. This is inconsistent with VSI's claim that the funded services must support and be directly related to a sheltered workshop or residence facility.

Whether by looking to the plain and ordinary meanings of the words used in the statute, or by reading Section 205.970.3

and Section 205.968.1 together, it is evident that the intent of the legislature was to provide a source of funds for a county to provide services of the type provided or which might be provided by sheltered workshops or residence facilities. Section 178.900.3 defines a sheltered workshop as:

> An occupation-oriented facility operated by a not for profit corporation, which, except for its staff, employs only handicapped persons and has a minimum enrollment of at least fifteen employable handicapped persons.

Sec. 178.900.3 RSMo 1994. The purpose of a sheltered workshop is to "provide a controlled work environment and a program designed toward enabling the handicapped person enrolled to progress toward normal living and to develop, as far as possible, his capacity, performance and relationship with other persons." Sec. 178.910.1 RSMo 1994. Section 205.969.2 defines a residential facility as, "places of residence and related activity or social centers for those eligible persons." Sec. 205.969.2 RSMo 1994.

Thus, read together, the statutes permit the DDRB and similar boards to fund sheltered workshops, residential facilities, and not-for-profit corporations which provide some or all of these same or related services for the care or employment of handicapped persons. That is, it can fund programs which provide a controlled work environment or a program designed toward enabling a handicapped person to progress toward normal living or to develop his or her capacity, performance or relationships with other persons, or which provide services related to a place of residence or social centers for eligible persons.

Judge Russell's application of the statutes below is fully consistent with this interpretation of the statute. As dis-cussed earlier, he held that the phrase "related services," in the context of the statute, meant "acts or commodities which are connected or associated with vocational training, vocational teaching, vocational activities, vocational workshops and/or residential facilities." While we agree with VSI that the statute does not use the work "vocational," we find Judge Russell's definition to be a practical way of applying the statutory definitions of the services provided by sheltered workshops and residence facilities to the statutory authorization to fund these and related types of services. Thus, we find no error in Judge Russell's use of this definition to guide him in sorting through the facts to determine which programs constitute "related services" under the statute.

Whether or not a particular program comes within the meaning of "related services" is a factual issue to be determined by the trial court in the first instance. While some of the programs which Judge Russell found to be within this definition are only marginally so, and while some which he found to be outside the definition are only marginally so, we cannot say that his factual determinations as to which programs fell within or outside this definition were unsupported by the evidence or constituted an abuse of discretion. Accordingly, we affirm.

Presiding Judge HAROLD L. LOWENSTEIN and Senior Judge FOREST W. HANNA, concur.