PROJECT, INC., Appellant,

v.

PRODUCTIVE LIVING BOARD FOR ST. LOUIS COUNTY CITIZENS WITH DEVELOPMENTAL DISABILITIES, Respondent.

No. ED 88758.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 11, 2007.

Francis E. Pennington III, St. Louis, MO, for Appellant.

James S. Cole, Jr., St. Louis, MO, for Respondent.

**OPINION**

GEORGE W. DRAPER III, Presiding Judge.

Project, Inc. (hereinafter, "Project") appeals from the trial court's judgment dismissing its petition for declaratory judgment against Productive Living Board for St. Louis County Citizens with Developmental Disabilities (hereinafter, "PLB") for denying funding to Project's sheltered workshop. Project raises two points on appeal. First, Project claims the trial court erred in dismissing its petition in that Project has standing to sue. Second, Project argues it has presented a justiciable claim and PLB is not entitled to sovereign immunity from being sued. We reverse and remand for further proceedings.

The facts as alleged in Project's petition, which we are required to deem as true, are as follows: In 1971, Missouri Senate Bill 40 (hereinafter, "SB–40") gave counties and cities not within counties statutory authority to levy and collect a property-based tax to provide financial support to sheltered workshops, residence facilities, and other related services for the care and/or employment of handicapped individuals.[1] If voters in those areas approve a tax levy, Section 205.968.1 RSMo (2004)[2] mandates the governing body of any county or city not within a county shall establish a board of directors which is "empowered to establish and/or operate a sheltered workshop...." Details of the composition, eligibility, and operation of these SB–40 boards are specified by statute.

PLB was established pursuant to Section 205.968.1 as an SB–40 board in St. Louis County (hereinafter, "the County"). PLB is a not-for-profit corporation with a board of directors appointed by the County Executive pursuant to Section 205.968.1. Similarly, the City of St. Louis (hereinafter, "the City") established an SB–40 board, St. Louis Office for Mental Retardation and/or Developmental Disabilities (hereinafter, "MR & DD"), which is likewise empowered to establish, fund and/or operate sheltered workshops. Both PLB and MR & DD "shall be taken and considered as a 'political subdivision' as the term is defined in Section 70.600, for the purposes of Sections 70.600 to 70.755" and are considered legal entities pursuant to Section 205.968.1.

A sheltered workshop is defined in Section 178.900(3) RSMo (2000) as "an occupation-oriented facility operated by a not-for-profit corporation, which, except for its staff, employs only handicapped persons

---

1. For purposes of gaining employment at a sheltered workshop, a "handicapped person" is defined by Section 178.900(2) RSMo (2000) as "a lower range educable or upper range trainable mentally retarded or other handicapped person sixteen years of age or over who has had school training and has a productive work capacity in a sheltered environ-

ment adapted to the abilities of the mentally retarded but whose limited capabilities make him [or her] nonemployable in competitive business and industry and unsuited for vocational rehabilitation training."

2. All statutory references are RSMo (2004) unless otherwise indicated.

and has a minimum enrollment of at least fifteen employable handicapped persons." The Missouri General Assembly has stated the express purpose of sheltered workshops as defined in Section 178.910 RSMo (2000) is to "provide a controlled work environment and a program designed toward enabling the handicapped person enrolled to progress toward normal living and to develop, as far as possible, his [or her] capacity, performance and relationship with other persons."

The Missouri Department of Elementary and Secondary Education certifies sheltered workshops and provides state funding. As of fiscal year 2005, Project alleges PLB annually receives $16 million in SB–40 funds from the County, its operating revenue was $17.75 million, its operating expenses were $16.72 million, and it had accumulated reserves in excess of $25 million, the investment of which generated approximately $800,000 per year in interest.

Project alleges no governmental entity directly or actively oversees PLB's receipt, management, investment, use, or expenditure of SB–40 funds. PLB has developed policies and procedures for allocating SB–40 funds to sheltered workshops, residential facilities, and other related services. PLB and its Vocational Services Committee have a policy of annually reviewing currently funded grants, and with limited exception, new grant requests. Currently, PLB annually distributes SB–40 funding to five workshops located in the County. PLB allocates funding to these workshops through its "building and major equipment replacement fund" (hereinafter, "building fund") and its "allocation fund." A workshop can receive money from the building fund for the purpose of buying or repairing buildings and equipment. PLB uses the building fund to distribute monies annually to County workshops based upon

the square footage of the physical plant of the respective workshops without determining whether the workshop has a specific, identifiable need for the funds. PLB places restrictions on how these funds are spent and retained. PLB distributes monies from its allocation fund to the County workshops on a pro rata basis based upon the number of handicapped County residents employed by County workshops. PLB directs County workshops to use money from the allocation fund for general operating expenses.

Conversely, MR & DD provides funding to City sheltered workshops based upon specific grant requests for building repairs and building equipment. MR & DD distributes these funds pro rata, based upon the number of City residents employed by the respective City workshop. Additionally, MR & DD allocates funding for operating equipment on a non-pro rata basis. MR & DD does not grant pro rata funding for County residents employed in City workshops, but it does provide funding to County workshops which employ City residents.

Project is a not-for-profit corporation which operates a sheltered workshop within the City. Thirty-nine percent of Project's workforce consists of handicapped County residents. Project requested funding from PLB's building fund and allocation fund to cover the costs of employing County residents. PLB denied Project's funding request based upon its policy of limiting distribution of SB–40 funds to workshops physically located in the County only. PLB does, however, allocate money to Project annually to underwrite the cost of an on-the-job training program and a community placement/employee retention program. PLB requested Project establish and operate these programs, which serve County residents exclusively, because such programs were unavailable in

the County. Project does not receive pro rata funding from MR & DD for the County residents it employs.

Project alleges it would like to expand and improve its services. In order to do so, Project claims it would have to acquire a new building. Additionally, Project would bear the burden of purchasing a new building without direct funding from MR & DD or PLB. Moreover, Project alleges it "is placed at an extreme competitive disadvantage vis-à-vis the [County] workshops" as a result of inadequate funding. Project claims County workshops are able to bid thirty to fifty percent below market value on subcontracting work, and this gives County workshops a competitive advantage over Project. Project states it lost more than $40,000 of its business in 2005 to County workshops because they underbid Project on subcontracting work due to being "highly financially subsidized" and possessing "effective labor rates that are so much lower than Project's. . . ."

Project filed this action for declaratory judgment and injunctive relief on May 25, 2006. In Count I, Project sought a ruling declaring PLB's policy of refusing to allocate pro rata funding to Project arbitrary, unreasonable, and in violation of the sheltered workshop statutes. Additionally, Project sought a ruling ordering PLB to allocate pro rata funding for Project upon the same terms and conditions as such funding is allocated to the County workshops. In Count II, Project requested preliminary and permanent injunctive relief to prevent PLB from implementing any policy which: (1) precludes Project from receiving pro rata funding; (2) discriminates against County residents which work at Project workshops; and (3) violates Missouri law.

PLB filed its motion to dismiss Project's petition on July 14, 2006, alleging several grounds for dismissal, including: (1) Project lacks standing to sue; (2) PLB has broad, absolute discretion to determine how to allocate its funding which is a nonjusticiable question that is not subject to judicial review; and (3) PLB is immune from suit because it is deemed a political subdivision by statute. The trial court granted PLB's motion to dismiss on August 24, 2006, specifically ruling Project lacked standing to sue. Project appeals.

▬ A motion to dismiss is an attack on the petition and is solely a test of the adequacy of that pleading. *Reynolds v. Diamond Foods & Poultry, Inc.*, 79 S.W.3d 907, 909 (Mo. banc 2002). In reviewing a trial court's dismissal of a declaratory action, we are obliged to construe the petition liberally, to take the statements of fact in the petition as true, and grant the plaintiff the benefit of every favorable inference that can be reasonably drawn from the facts pleaded. *Dodson v. City of Wentzville*, 133 S.W.3d 528, 533 (Mo.App. E.D.2004). This Court does not endeavor to determine whether the alleged facts are credible or persuasive. *Hallquist v. Midden*, 196 S.W.3d 601, 603 (Mo.App. E.D.2006). "Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306 (Mo. banc 1993). We will affirm the order of dismissal if any ground supports the motion, regardless of whether the trial court actually relied upon that ground in making its ruling. *Johnson v. Vee Jay Cement*, 77 S.W.3d 84, 88 (Mo. App. E.D.2002).

▬ In Project's first point, it alleges the trial court erred in dismissing its petition for lack of standing. Determining whether a party has standing is a threshold issue. *Executive Bd. of Missouri Baptist Convention v. Carnahan*, 170 S.W.3d

437, 445 (Mo.App. W.D.2005). When a party lacks standing, a court has no jurisdiction to grant the relief requested. *Healthcare Services of the Ozarks, Inc. v. Copeland,* 198 S.W.3d 604, 612 (Mo. banc 2006); *Sherwood Nat'l Educ. Ass'n v. Sherwood–Cass R–VIII Sch. Dist.,* 168 S.W.3d 456, 462 (Mo.App. W.D.2005). "This [C]ourt determines standing as a matter of law on the basis of the petition, 'along with any other non-contested facts accepted as true by the parties at the time the motion to dismiss was argued.'" *Kinder v. Holden,* 92 S.W.3d 793, 803 (Mo. App. W.D.2002)(*quoting Home Builders Ass'n of Greater St. Louis, Inc. v. City of Wildwood,* 32 S.W.3d 612, 614 (Mo.App. E.D.2000)).

■■■ "Reduced to its essence, standing roughly means that the parties seeking relief must have some personal interest at stake in the dispute, even if that interest is attenuated, slight or remote." *Ste. Genevieve Sch. Dist. R II v. Bd. of Aldermen of City of Ste. Genevieve,* 66 S.W.3d 6, 10 (Mo. banc 2002); *F.W. Disposal South, LLC v. St. Louis County,* 168 S.W.3d 607, 611 (Mo.App. E.D.2005). In the context of an action for declaratory judgment, Missouri courts require that the plaintiff have a legally protectable interest at stake in the outcome of the litigation. *Ste. Genevieve Sch. Dist.,* 66 S.W.3d at 10; *Dodson,* 133 S.W.3d at 535. A legally protectable interest necessary for standing to bring a declaratory judgment action "exists if the plaintiff is directly and adversely affected by the action in question or if the plaintiff's interest is conferred by statute." *Ste. Genevieve Sch. Dist.,* 66 S.W.3d at 10.

■■ Using these standards to review Project's petition, we find sufficient facts were pleaded to establish Project's standing to sue PLB challenging its withholding of funding. First, we find Project's petition alleged it was directly and adversely affected by the withholding of funds. Specifically, Project claimed it requested funds from PLB upon the same terms and conditions as PLB funds County workshops, but was denied funding due to PLB's policy of restricting funds to workshops physically located in the County. Further, Project's petition alleged it currently provides specific services to County residents at PLB's request for on-the-job training and community/employee placement programs. PLB funds these specific projects, located outside of the County; however, Project alleged PLB has refused to review or increase that funding, resulting in Project incurring in excess of $20,000 in unreimbursed expenses for these programs.

Moreover, Project's petition alleged it possessed a statutorily conferred interest in challenging the reasonableness of PLB's policy of refusing to allocate funding to sheltered workshops located outside of the County. Project's petition alleged PLB developed policies and procedures for allocating SB–40 monies to sheltered workshops. Project claimed these policies include "strictly limiting distribution" of funds to five County workshops and refusing to grant Project funding solely on the basis that it is located outside of the County. Project's petition explicitly stated PLB's policy of withholding funding was "arbitrary and unreasonable, and violates both the letter and spirit of the sheltered-workshop statutes" of Missouri. Section 205.968.2 enables an SB–40 board to use its discretion to impose limitations with respect to individuals being served and the services provided. However, this statute mandates, "[s]uch limitations shall be reasonable in the light of available funds, needs of the persons and community to be served as assessed by the board, and the appropriateness and efficiency of combining services to persons with various types of handicaps or disabilities." Project's pe-

tition clearly stated it is challenging the reasonableness of PLB's policy of withholding funds because Project is located outside of the County.

 PLB urges this Court to focus on its assertion that the crux of Project's petition alleged it is at a competitive disadvantage to County workshops when submitting bids for work and Project has no legally protected right to be free from competition. While Project's petition does reflect this factual allegation, it is not the only allegation upon which Project seeks relief, and therefore, is not fatal to its standing. At this juncture we do not address the merits of Project's claims, recognizing a plaintiff is entitled to a declaration of his or her rights under the pleadings, even though the plaintiff may have advanced a mistaken contention of law. *Harness v. State Farm Mut. Auto. Ins. Co.*, 867 S.W.2d 591, 592 (Mo.App. E.D. 1993). Further, "[a] plaintiff's standing to claim declaratory relief is not impaired by the probability the plaintiff will ultimately not prevail." *City of St. Peters v. Concrete Holding Co.*, 896 S.W.2d 501, 504 (Mo.App. E.D.1995). Accordingly, we hold Project pleaded sufficient facts in its petition to demonstrate it has standing to sue PLB.

 In Project's second point, it alleges the trial court erred in dismissing its petition for declaratory judgment for failure to state a cause of action. First, Project argues its action brings a justiciable claim challenging the reasonableness of PLB's policy regarding funding.

 Project must demonstrate a justiciable controversy for which it has no adequate remedy at law in order to maintain its declaratory judgment action against PLB. *Levinson v. State*, 104 S.W.3d 409, 411 (Mo. banc 2003). "A justiciable controversy exists where the plaintiff has a legally protectable interest at stake, a substantial controversy exists between parties with genuinely adverse interests, and that controversy is ripe for judicial determination." *Barron v. Shelter Mut. Ins. Co.*, 220 S.W.3d 746, 748 (Mo. banc 2007). "A controversy is ripe if the parties' dispute is developed sufficiently to allow the court to make an accurate determination of the facts, to resolve a conflict that is presently existing and to grant specific relief of a conclusive character." *Id.*

The parties dispute whether Project has presented a justiciable claim. Project claims its allegations that support its argument for standing likewise support its contention that it has presented a justiciable claim. Conversely, PLB argues its funding decisions are unreviewable as legislative acts, which enjoy unfettered discretion under Missouri law.

As discussed previously, Project has demonstrated through its petition that it has a legally protectable interest at stake, and there is no question a controversy exists between the parties with genuinely adverse interests. Project is seeking funding in general and for unreimbursed expenses relating to the specific services it provides County residents. PLB has refused to provide any general funding based upon its policy, nor has it reviewed or granted additional funding to cover Project's unreimbursed expenses relating to the services PLB request Project supply. Further, the parties do not dispute the ripeness of the controversy. We disagree, however, with PLB's characterization that it enjoys absolute, unqualified discretion to distribute funds as it sees fit, without being subject to judicial scrutiny.

Initially, we recognize the Court of Appeals has engaged in judicial review of an SB–40 board's decision on funding in *Vocational Services Inc. v. The Developmental Disabilities Resource Bd.*, 5 S.W.3d 625

(Mo.App. W.D.1999). In *Vocational Services,* a vocational services organization brought a declaratory judgment action challenging the authority of a Clay County developmental disabilities resource board to provide funding for programs which were not sheltered workshops, residential facilities, or for services directly related to the running of those entities. *Id.* at 628. Both parties, being dissatisfied with the trial court's interpretation of the statutory scheme, appealed. *Id.* at 629. The Western District affirmed the trial court's interpretation after engaging in a detailed analysis construing Section 205.968.1 and the term "related services." *Id.* at 630–32.

We find the holding in *Vocational Services* instructive, especially in light of the Western District's implicit finding that: (1) the SB–40 board could be sued, and therefore, does not enjoy sovereign immunity; and (2) an SB–40 board's decisions regarding the parameters of its funding could be challenged by an aggrieved party and subjected to judicial review. While we recognize the permissive language regarding funding decisions in the governing statutes, we note the legislature has not explicitly stated SB–40 boards enjoy sovereign immunity from suit, nor has our research indicted otherwise. We note, however, that Section 537.600 "codifies and limits the common law of sovereign immunity to only tort actions." *S & P Properties, Inc. v. City of University City,* 178 S.W.3d 579, 584 (Mo.App. E.D.2005). It is clear Project has not pleaded a tort action in its petition.

■ Moreover, we remind the parties that we do not conduct an analysis or engage in a determination of the merits, per our standard of review, when examining a motion to dismiss. In that vein, if a trial court must construe the statutes at issue in order to refute the claim of right of the plaintiff, the petition may not be dismissed. *Nicolai v. City of St. Louis,* 762 S.W.2d 423, 425 (Mo. banc 1988)(*quoting Crain v. Missouri State Employees' Ret. Sys.,* 613 S.W.2d 912, 915 (Mo.App. W.D.1981)). Thus, we find the other grounds listed in PLB's motion to dismiss insufficient to sustain the trial court's judgment.

Accordingly, we reverse the trial court's judgment dismissing Project's petition for lack of standing. Upon remand, we direct the trial court "to permit the parties to properly submit the issue for adjudication in a manner consistent with this opinion, either by a motion for summary judgment or by [other appropriate means]." *City of Hannibal v. Marion County,* 745 S.W.2d 842, 845 (Mo.App. E.D.1988); *see also, Sandy v. Schrivo,* 39 S.W.3d 853, 857 (Mo. App. W.D.2001); *Wright v. Dep't of Corrections,* 48 S.W.3d 662, 667 (Mo.App. W.D.2001).

The trial court's judgment is reversed and remanded for further proceedings.

GARY M. GAERTNER, SR., Senior Judge.[3], and ROBERT G. DOWD, JR., Judge, concur.

---

**3.** Judge Gary M. Gaertner, Sr. took senior status between the date this case was submitted and the date of this opinion.