NUMBER
13-10-00200-CV

 

                                        COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG

                                                                      

 

COUNSEL FINANCIAL SERVICES, L.L.C.,                              Appellant,

 

v.

 

DAVID McQUADE LEIBOWITZ

AND DAVID McQUADE LEIBOWITZ, P.C.,                       
    Appellees.

                                                                      

 

On appeal from the 370th District Court 

of Hidalgo County, Texas.

                                                                  

 

MEMORANDUM OPINION

 

Before
Chief Justice Valdez and Justices Rodriguez and Benavides[1]

                      Memorandum
Opinion by Justice Benavides

 

            Through this appeal, Counsel Financial Services,
L.L.C. (“Counsel Financial”) seeks to set aside an order granting a temporary
injunction which prevents it from, inter alia, instituting legal
proceedings to enforce a security agreement and collecting on a judgment in its
favor.  We reverse and remand.[2]

I.  Background

            Counsel Financial loaned the law firm of David
McQuade Leibowitz, P.C. more than five million dollars.  The loan was secured
by David McQuade Leibowitz, P.C. and David McQuade Leibowitz individually
(collectively “Leibowitz”).  The promissory note evidencing the loan was
secured by a security agreement and a guaranty executed by Leibowitz in his
individual capacity.  The note and security agreement were modified several
times by the agreement of the parties over the course of several years.  These
documents provided Counsel Financial with a security interest in Leibowitz’s
legal fees,[3]
accounts, and intangibles in the event of a default under the loan.  

Leibowitz failed to make payments
due under the loan, and Counsel Financial brought suit against Leibowitz in
cause number 12008–010002 in the Supreme Court of the State of New York, in and
for the County of Erie, styled Counsel Financial Services, LLC, v. David
McQuade Leibowitz, P.C. et al., for non-payment of the note and the
guaranty.  Following several trial court hearings, Counsel Financial obtained a
summary judgment against Leibowitz in the amount of $5,506,180.96.[4] 
In the New York court system, Leibowitz unsuccessfully appealed the judgment.  

On December 2, 2008, Counsel
Financial filed an authenticated copy of the New York judgment in state
district court in Bexar County, Texas.  On December 29, 2008, Leibowitz filed a
motion for relief from enforcement of foreign judgment, arguing that the trial
court should apply the Craddock standard for motions for new trial with
regard to the domestication of foreign judgments.  See Craddock v. Sunshine
Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124, 126 (1939) (holding that a
default judgment should be set aside and a new trial granted if:  (1) the
failure to answer or appear at trial was not intentional or the result of
conscious indifference but was due to a mistake or accident; (2) the defendant
sets up a meritorious defense; and (3) the motion is filed at such time that granting
a new trial would not result in delay or otherwise injure the plaintiff).  On
January 30, 2009, the trial court granted Leibowitz’s motion and refused to
enforce the New York judgment.  

Counsel Financial appealed that
determination.  The San Antonio Court of Appeals held that the Craddock
motion for new trial standard relating to default judgments does not apply to
proceedings under the Uniform Enforcement of Foreign Judgments Act.  Counsel
Financial Services, L.L.C., v. Leibowitz, P.C., 31 S.W.3d 45, 47 (Tex.
App.—San Antonio 2010, pet. denied).  The court reversed and rendered judgment
that the New York judgment is entitled to full faith and credit and is fully
enforceable in Texas.  Id. at 57.  The Texas Supreme Court denied the
petition for review of this cause on August 20, 2010 and further denied
rehearing on October 15, 2010.

In separate proceedings which
underlie this appeal, Leibowitz represented Maria Alma Anzaldua in a personal
injury lawsuit against Kmart Corporation (“Kmart”) in the 370th District Court
of Hidalgo County.  Upon learning that Anzaldua and Kmart had reached a
settlement, Counsel Financial filed a plea in intervention on the grounds that
Leibowitz had refused to pay the New York debt and judgment.  Counsel Financial
sought “an order from the Court directing all Parties to pay directly to
[Counsel Financial] all funds (up to the amount of CFS’s lien) to which
Leibowitz and the Law Firm may be entitled to as a result of this case and the
settlement.”  In its intervention, Counsel Financial expressly stated that it
“does not seek to disturb the proposed settlement agreement in the Lawsuit” and,
likewise, “does not seek to disturb the rights of Plaintiff to receive the
portion of the settlement that is rightfully hers, or the release of Defendant
from the Lawsuit.”  

On October 9, 2009, Leibowitz also
intervened in the Hidalgo County suit and asserted claims for affirmative
relief against Counsel Financial, including claims for declaratory and
temporary injunctive relief and damage claims for tortious interference and
business disparagement.  By his first amended pleading, Leibowitz sought an
anti-suit injunction and an anti-execution injunction attempting to restrain
Counsel Financial from enforcing the domesticated judgment or the security
agreement.  According to Leibowitz’s pleadings, Counsel Financial claimed that
it was entitled to Leibowitz’s portion of the settlement funds based either on
“a foreign default judgment which is not now enforceable under Texas law, or a
Security Agreement which [Counsel Financial] has itself breached.”

On March 19, 2010, the trial court
signed an order granting interpleader of the settlement funds, releasing Kmart
from “any and all liability” to Anzaldua, Leibowitz, and Counsel Financial, and
severing all claims against Kmart into a separate cause.  The order recites
that “[a]ll claims or causes of action asserted by any party against Kmart
Corporation” in the original cause number or the severed cause which were not
expressly granted in the order were denied, and the order resolved “all claims”
against Kmart.  That same day, by separate order, the trial court granted
Anzaldua’s unopposed motion to release her share of the funds held in the
registry of the court “as her share of the settlement funds.”  

On March 22, 2010, the trial court
issued an order granting Leibowitz his requested relief.  The temporary
injunction states in relevant part:

            1.         COUNSEL
FINANCIAL SERVICES, L.L.C. (“CFS”) has submitted itself to the jurisdiction of
this Court, and waived any objection to venue of this matter, by requesting
affirmative relief against Leibowitz in this court in Counsel Financial
Services, LLC’s Plea in Intervention wherein it seeks not only to enforce the
Security Agreement (the “Security Agreement”), but also invokes the
jurisdiction of this Court to take possession of property which is alleged to
belong to CFS pursuant to the terms of a judgment taken November 25, 2008 by
default in the case styled Counsel Financial Services, LLC, v. David McQuade
Leibowitz, P.C. et al., Cause No. 2008–10002, in the Supreme Court of the
State of New York, New York in and for the County of Erie, (“the Default
Judgment”).

 

. . . .

            3.         Leibowitz
has shown a strong and substantial likelihood that he will prevail on the
merits of his Declaratory Judgment Action and his action for damages.  In
particular, Leibowitz has shown that there is a strong and substantial
likelihood that upon trial on the merits it will be established that:

 

a.    CFS has no right
under the terms of the Security Agreement to contact any Defendant, Attorney
for Defendant, and/or client, or any representative of any of those parties, in
any case handled by Leibowitz, because such persons are “. . . not obligated
with respect to any collateral . . .” owned by CFS.  CFS has no right to any
contingency fees until they have matured, by judgment or otherwise.

 

b.    The negative
covenants set out in paragraph 4(b) of the Security Agreement constitute an unconscionable
interference with the attorney–client relationship in abrogation of the duty of
utmost fidelity owed by Leibowitz to his clients, and are unenforceable under
Texas Law as against public policy;

 

c.    The right given to
CFs under paragraph 6(c) of the Security Agreement, to contact Defendants and
their attorneys in Leibowitz’s cases and direct them to pay funds to CFS
requires a violation of the Texas Disciplinary Rules of Professional Conduct in
that Leibowitz’s clients have never consented to the release of confidential
information relating to the amount and timing of their settlements;

 

d.    Leibowitz has the
right to offset any amounts that he may owe to CFS against the amounts that CFS
and its agents owe him as a result of their wrongful conduct as shown by the
evidence presented;

 

e.    CFS has no right to
assert claims under the Default Judgment until such time as the Judgment has
been finally domesticated in the State of Texas and all appeals relating thereto
are exhausted; and;

 

f.     CFS has breached and
defaulted under the terms of the Security Agreement.  Being in default under
the Security Agreement, CFS has excused any further performance thereof by
Leibowitz, and Leibowitz has shown a probable right to collect damages
proximately cause[d] by such breach.

 

            . . . .

            In order
to protect the jurisdiction of this Court, prevent CFs from rendering the
declaratory relief sought by Leibowitz ineffectual, and to preserve the status
quo until a trial on the merits can be had, IT IS ORDERED, ADJUDGED[,] AND
DECREED as follows:

 

            1.  CFS,
and its employees, agents, attorneys, and those acting in concert with such
people who have actual knowledge of the terms of the Order are hereby
immediately ENJOINED and RESTRAINED from:

 

a.           
Enforcing
or attempting to enforce the terms of the Security Agreement, including but not
limited to, communicating to any third parties that Leibowitz is in default of
the Security Agreement and/or instructing third persons/parties to pay any monies
over to CFS;

 

b.           
Instituting
and/or maintaining, or seeking affirmative relief in an action in any other
Texas State Court other than the 370th Judicial Court of Hidalgo
County, Texas to enforce the terms of the Security Agreement, the Default
Judgment[,] and/or claiming an interest in the proceeds of settlement of any of
Leibowitz’s cases;

 

c.           
Pursuing
any claim for recovery under the Security Agreement in any Court other than the
370th Judicial Court of Hidalgo County, Texas; and, 

 

d.           
Attempting
to levy, execute, or otherwise attempt to collect on the Judgment issued in
cause No. 2008–10002, in the Supreme Court of State of New York, New York in
and for the County of Erie, styled Counsel Financial Services, LLC, v. David
McQuade Leibowitz, P.C. et al. on November 25, 2008, unless and until:

 

                                             
i.               
the
Default Judgment has been formally domesticated by an order of a Texas Court of
competent jurisdiction, and all appeals relating thereto have been fully and
finally exhausted, and/or not otherwise superceded pursuant to the Texas
Uniform Enforcement of Foreign Judgments Act, by this Court or otherwise;
and/or,

 

                                           
ii.               
all
just and lawful recoupments and offsets which Leibowitz has to the amounts
alleged to be owed under the Default Judgment have been finally determined by
this Court.

 

            Counsel Financial raises six issues on appeal: 
(1) the trial court abused its discretion by enjoining enforcement of or
execution on the judgment domesticated in Bexar County because Leibowitz failed
to establish a probable right to recover or probable, imminent, irreparable
harm; (2) the trial court exceeded its jurisdiction by granting the anti-execution
temporary injunction; (3) the trial court abused its discretion by granting the
anti-suit temporary injunction because it does not come within any of the four
bases recognized by the Texas Supreme Court for anti-suit injunctions; (4) the
trial court exceeded its jurisdiction by granting the anti-suit temporary
injunction; (5) the trial court abused its discretion by enjoining enforcement
of Counsel Financial’s rights under the security agreement because Leibowitz
failed to establish a probable right to recover or probable, imminent, irreparable
harm; and (6) the temporary injunction is void because it fails to specifically
state why irreparable injury will occur if the temporary injunction is not
granted.  For purposes of clarity, we will address these issues out of order.  

II. 
Standard of Review for Temporary
Injunction

A trial court has broad discretion
in deciding whether to grant or deny a temporary injunction.  Butnaru v.
Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002).  Appellate review is
strictly limited to evaluating whether there has been a clear abuse of
discretion.  See id.  The scope of review is limited to the validity of
the temporary injunction order.  See Walling v. Metcalfe, 863 S.W.2d 56,
58 (Tex. 1993).  We do not review the merits of the underlying case.  Davis
v. Huey, 571 S.W.2d 859, 861 (Tex. 1978).  Instead, we determine whether
there has been an abuse of discretion by the trial court in granting or denying
the requested relief.  Id. at 862.  In making this determination, we may
not substitute our judgment for that of the trial court unless its decision was
so arbitrary that it exceeded the bounds of reasonableness.  See Butnaru,
84 S.W.3d at 204.  We review the evidence in the light most favorable to the
order and indulge all reasonable inferences in favor of the decision.  See
Davis, 571 S.W.2d at 862; City of McAllen v. McAllen Police Officers
Union, 221 S.W.3d 885, 893 (Tex. App.—Corpus Christi 2007, pet. denied).  A
trial court does not abuse its discretion if it bases its decision on
conflicting evidence where evidence in the record reasonably supports the trial
court’s decision.  Davis, 571 S.W.2d at 862.  

The purpose of a temporary
injunction is to preserve the status quo until a trial on the merits.  Butnaru,
84 S.W.3d at 204; Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993). 
The sole issue presented to a trial court at a temporary injunction hearing is
whether the applicant is entitled to preserve the status quo pending trial on
the merits.  Butnaru, 84 S.W.3d at 204; Davis v. Huey, 571 S.W.2d
859, 862 (Tex. 1978).  The status quo is defined as the last, actual,
peaceable, non-contested status that preceded the pending controversy.  In
re Newton, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding); Universal
Health Servs., Inc. v. Thompson, 24 S.W.3d 570, 577 (Tex. App.—Austin 2000,
no pet.).  

A temporary injunction is an
extraordinary remedy that does not issue unless the applicant pleads and proves
three elements:  (1) a cause of action, (2) a probable right to the relief
sought, and (3) a probable, imminent, and irreparable injury in the interim. Butnaru,
84 S.W.3d at 204; Wilson N. Jones Mem’l Hosp. v. Huff, 188 S.W.3d 215,
218 (Tex. App.—Dallas 2003, pet. denied).  A probable right of success on the
merits is shown by alleging a cause of action and introducing evidence that
tends to sustain it.   Jennifer Yarto & DTRJ Invs., L.P. v. Gilliland,
287 S.W.3d 83, 94 (Tex. App.—Corpus Christi 2009, no pet.).  




 

III.  Uniform Enforcement of Foreign Judgments
Act

The United States Constitution
requires each state to give full faith and credit to the public acts, records,
and judicial proceedings of every other state.  See U.S. Const. art. IV, § 1.  Texas law
provides two methods for enforcing a foreign judgment.  Charles Brown,
L.L.P. v. Lanier Worldwide, Inc., 124 S.W.3d 883, 902 (Tex. App.—Houston
[14th Dist.] 2004, no pet.).  A judgment creditor may either bring a common law
action to enforce a judgment, see Tex.
Civ. Prac. & Rem. Code Ann. § 35.008 (West 2008), or the creditor
may enforce a foreign judgment under the Uniform Enforcement of Foreign
Judgments Act (“UEFJA”), as provided in chapter 35 of the Texas Civil Practice
and Remedies Code.  See id. §§ 35.001–.008 (West 2008).  The UEFJA
provides a means by which an authenticated copy of a foreign judgment may be
filed in a court of competent jurisdiction in Texas and become enforceable as a
Texas judgment.  See Tex. Civ.
Prac. & Rem. Code Ann. § 35.003(c) (West 2008); see Walnut Equip.
Leasing Co. Inc. v. Wu, 920 S.W.2d 285, 286 (Tex. 1996).  

When a judgment creditor chooses to
proceed under the UEFJA, the filing of a foreign judgment is in the “nature of
both a plaintiff’s original petition and a final judgment:  the filing
initiates the enforcement proceeding, but it also instantly creates a Texas
judgment that is enforceable.”  Moncrief v. Harvey, 805 S.W.2d 20, 22
(Tex. App.—Dallas 1991, writ denied); see Wu, 920 S.W.2d at 286; Counsel
Fin. Servs., L.L.C., 311 S.W.3d at 50.  A foreign judgment filed under the
UEFJA is treated in the same manner as a judgment of the court in which the
foreign judgment is filed.  Tex. Civ.
Prac. & Rem. Code Ann. § 35.003(b) (West 2008).  

When a judgment creditor files an
authenticated copy of a foreign judgment under the UEFJA, he satisfies his
burden to present a prima facie case for enforcement of the judgment; the
burden then shifts to the judgment debtor to prove the foreign judgment should
not be given full faith and credit.  Jonsson v. Rand Racing, L.L.C., 270
S.W.3d 320, 323–24 (Tex. App.—Dallas 2008, no pet.); H. Heller & Co. v.
La–Pac. Corp., 209 S.W.3d 844, 849 (Tex. App.—Houston [14th Dist] 2006,
pet. denied).  There are five well established exceptions to the requirements
of full faith and credit:  (1) the foreign judgment is interlocutory; (2) the
foreign judgment is subject to modification under the law of the rendering
state; (3) the rendering state court lacked jurisdiction; (4) the foreign
judgment was procured by extrinsic fraud; and (5) the period to file a foreign
judgment under the UEFJA had expired.  Mindis Metals, Inc. v. Oilfield Motor
& Control, Inc., 132 S.W.3d 477, 484 (Tex. App.—Houston [14th Dist.]
2004, pet. denied).  A motion contesting enforcement of a foreign judgment
operates as a motion for new trial.  Jonsson, 270 S.W.3d at 324.  A
trial court has broad discretion in this regard.  Id.  The presumption
of validity can only be overcome by clear and convincing evidence to the
contrary.  Mindis Metals, Inc., 132 S.W.3d at 484; Cash Register
Sales & Servs. of Houston, Inc. v. Copelco Capital, Inc., 62 S.W.3d
278, 281 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

Pursuant to section 35.003(c) of
the UEFJA, such a foreign judgment has “the same effect and is subject to the
same procedures, defenses, and proceedings for reopening, vacating, staying,
enforcing, or satisfying a judgment as a judgment of the court in which it is
filed.”  Tex. Civ. Prac. & Rem. Code
Ann. § 35.003(c); Counsel Fin. Servs., L.L.C., 311 S.W.3d at 50. 
The UEFJA provision that a filed foreign judgment is subject to the same
procedures, defenses, and proceedings for vacating a Texas judgment has been
interpreted as referring to “the procedural devices available to vacate a Texas
judgment.”  Mindis Metals, Inc., 132 S.W.3d at 484.  “It cannot mean
that the judgment can be vacated for any reason sufficient to support a
traditional motion for new trial.”  Id.  

Further, in a collateral attack on
a sister state’s judgment, no defense may be set up that goes to the merits of
the original controversy.  Russo v. Dear, 105 S.W.3d 43, 46 (Tex.
App.—Dallas 2003, pet. denied).  In Russo, the court opined that it
would be improper to raise a personal jurisdiction issue in Texas when it had
been fully and fairly litigated in the foreign jurisdiction.  Id. at
47.  “The Texas court’s scope of inquiry is limited to whether questions of
jurisdiction were fully and fairly litigated and finally decided by a sister
state, and if so, personal jurisdiction may not be raised again in the Texas
court.”  Id.; Jonsson, 270 S.W.3d at 327 (“After considering the
evidence, we conclude appellees provided clear and convincing evidence to
overcome the presumption of validity that the California judgment should be
given full faith and credit in Texas.  Because appellees established an
exception to the California court’s jurisdiction, specifically that service of
process was inadequate under the California service of process rules, the trial
court did not misapply the law to the established facts of this case.”); see
also Diesel Injection Sales & Serv. v. Diesel Heads & Parts Servs.,
No. 13-09-289-CV, 2010 Tex. App. LEXIS 2333, at **3–5 (Tex. App.—Corpus Christi
Apr. 1, 2010, no pet.) (mem. op.).

IV.  Jurisdiction to Enjoin Execution 

Because jurisdiction is
fundamental, we first address Counsel Financial’s claims in its second issue
that the trial court exceeded its jurisdiction by granting the anti-execution
temporary injunction.  

In this case, the 370th District
Court of Hidalgo County enjoined execution on a judgment domesticated in the
285th District Court of Bexar County.  A suit to enjoin the enforcement of the
judgment of a court other than the one in which the action is brought is
generally regarded as an impermissible collateral attack on that judgment.  Scott
v. Graham, 156 Tex. 97, 292 S.W.2d 324, 327 (Tex. 1956); In re Cantu,
961 S.W.2d 482, 486 (Tex. App.—Corpus Christi 1997, orig. proceeding); Butron
v. Cantu, 960 S.W.2d 91, 94 (Tex. App.—Corpus Christi 1997, no pet.); McVeigh
v. Lerner, 849 S.W.2d 911, 914 (Tex. App.—Houston [1st Dist.] 1993, writ
denied); Martin v. Stein, 649 S.W.2d 342, 345 (Tex. App.—Fort Worth
1983, writ ref’d n.r.e.).

           “Actions to stay proceedings in a suit shall be
brought in the county in which the suit is pending.”  Tex. Civ. Prac. & Rem. Code Ann. § 15.012 (West 2002). 
Actions to restrain execution of a judgment based on invalidity of the judgment
or of the writ shall be brought in the county in which the judgment was
rendered.”  Id. § 15.013 (West 2002).  A suit to enjoin enforcement of a
judgment must be brought in the court which rendered the judgment.  See id.
§ 65.023 (West 1997); Zuniga v. Wooster Ladder Co., 119 S.W.3d 856,
860–61 (Tex. App.—San Antonio 2003, no pet.); McVeigh, 849 S.W.2d at 915.

These provisions of the Texas Civil
Practice and Remedies Code control not just venue of this type of suit, but
also jurisdiction as well, so long as the judgment in question is valid on its
face.  Hageman/Fritz, Byrne, Head & Harrison, L.L.P. v. Luth, 150
S.W.3d 617, 629 (Tex. App.—Austin 2004, no pet.); Butron, 960 S.W.2d at
95; McVeigh, 849 S.W.2d at 914.  However, this jurisdictional limitation
only applies to a suit “attacking the judgment, questioning its validity, or
presenting defenses properly connected with the suit in which it was rendered,
and which should have been adjudicated therein.”  Zuniga., 119 S.W.3d at
860–61; Kruegel v. Rawlins, 121 S.W. 216, 217 (Tex. Civ. App.—Dallas
1909), writ ref’d, 103 Tex. 86, 124 S.W. 419, 419–20 (Tex. 1910); Realty
Trust Co. v. Gabert, 40 S.W.2d 869, 869 (Tex. Civ. App.—Waco 1931, no
writ).

In determining the application of
these statutes to the instant case, we look to Leibowitz’s live pleadings to
see if he attacks the judgment, questions its validity, or presents defenses
properly connected with the suit in which it was rendered and which should have
been adjudicated in that suit.  See Zuniga, 119 S.W.3d at 860–61.  In
his pleadings, Leibowitz asserted generally that the summary judgment was
unenforceable.  Leibowitz’s claims for affirmative relief concern, inter alia,
alleged breaches of the original promissory note and security agreement,
Counsel Financial’s rights under the security agreement, and Leibowitz’s
alleged rights to offset “any amounts that he may owe under the Default
Judgment and/or the Security Agreement against the amounts that CFS and its
agents owe him as a result of their wrongful conduct as described herein.” 
Leibowitz specifically asserts that:

Leibowitz seeks the
aid of this Court to put an end to CFS’s piecemeal attempts to wrongfully
collect the contested amounts due under the Note through the enforcement of the
Security Agreement, and to provide a forum to allow Leibowitz to assert any
offsets and/or recoupment he may have to the collection of the amount sought by
CFS.  

 

According to Leibowitz, “[a]ll of the claims raised by CFS
relate to the rights of the parties under the Security Agreement and the
Default Judgment.”  

            As stated previously, the New York judgment has
been domesticated in Texas pursuant to the UEFJA and is valid.  Leibowitz’s
claims in the instant suit necessarily challenge that judgment and raise
defenses that should have been adjudicated in New York.  See Russo, 105
S.W.3d at 46.  Thus, the underlying court lacked jurisdiction over the claims
pertaining to execution and enforcement of the judgment.  We sustain Counsel
Financial’s second issue.  

            Having so ruled,
we need not address Counsel Financial’s first issue contending that the trial
court abused its discretion by enjoining enforcement of the judgment on grounds
that Leibowitz failed to establish a probable right to recover or probable,
imminent, irreparable harm.  See Tex.
R. App. P. 47.1, 47.4.  We likewise need not address Counsel Financial’s
fifth issue, through which it asserts that the trial court abused its
discretion by enjoining enforcement of Counsel Financial’s rights under the
security agreement because Leibowitz failed to establish a probable right to
recover or probable, imminent, irreparable harm.[5]
 See id.

V.  Voidness

By its sixth issue, Counsel
Financial asserts that the temporary injunction is void because it fails to
specifically state why irreparable injury will occur if the temporary injunction
is not granted.  Rule 683 of the Texas Rules of Civil Procedure states that
every order granting an injunction must “set forth the reasons for its
issuance” and “be specific in its terms.”  Tex.
R. Civ. P. 683.  The Texas Supreme Court “interpret[s] the Rule to
require . . . that the order set forth the reasons why the court deems it
proper to issue the writ to prevent injury to the applicant in the interim;
that is, the reasons why the court believes the applicant’s probable right will
be endangered if the writ does not issue.”  Transp. Co. of Tex. v. Robertson
Transps., Inc., 152 Tex. 551, 261 S.W.2d 549, 553 (Tex. 1953). 
Accordingly, the order must provide a “detailed explanation of the reason for
the injunction’s issuance.”  Adust Video v. Nueces County, 996 S.W.2d
245, 249 (Tex. App.—Corpus Christi 1999, no pet.).  The explanation must
include specific reasons and not merely conclusory statements.  Kotz v.
Imperial Capital Bank, 319 S.W.3d 54, 56–57 (Tex. App.—San Antonio 2010, no
pet.).  Mere recitals regarding harm are insufficient.  See e.g., id.
(holding that an order stating that plaintiffs “will suffer irreparable injury
in their possession and use of the Subject Property in the event that the
requested injunctive relief is not granted, that they have no adequate remedy
at law, and that the requested injunctive relief is necessary to preserve the
status quo pending final trial” to be insufficient); Indep. Capital Mgmt.,
L.L.C. v. Collins, 261 S.W.3d 792, 795–96 (Tex. App.—Dallas 2008, no pet.) (holding
that an order that recited the required elements for relief was conclusory and
void); AutoNation, Inc. v. Hatfield, 186 S.W.3d 576, 581 (Tex.
App.—Houston [14th Dist.] 2005, no pet.) (holding that the mere recital of
“irreparable harm” does not meet Rule 683’s specificity requirements); Monsanto
Co. v. Davis, 25 S.W.3d 773, 788 (Tex. App.—Waco 2000, pet. dism’d w.o.j.)
(concluding that a temporary injunction order was insufficiently specific where
it stated that plaintiffs “will suffer probable injury”); Byrd Ranch, Inc.
v. Interwest Sav. Assoc., 717 S.W.2d 452, 453–55 (Tex. App.—Fort Worth
1986, no writ) (concluding that an order was insufficiently specific where it
stated that the plaintiff “will suffer irreparable harm for which it has no
adequate remedy at law”); Univ. Interscholastic League v. Torres, 616
S.W.2d 355, 358 (Tex. Civ. App.—San Antonio 1981, no writ) (same); Gen.
Homes, Inc. v. Wingate Civic Assoc., 616 S.W.2d 351, 353 (Tex. Civ.
App.—Houston [14th Dist.] 1981, no writ) (finding that a temporary injunction
order did not satisfy Rule 683 “because it only states the trial court’s
conclusion that immediate and irreparable harm will result if the injunction is
not granted, with no specific reasons supporting the conclusion”); Stoner v.
Thompson, 553 S.W.2d 150, 151 (Tex. Civ. App.—Houston [1st Dist.] 1977,
writ ref’d n.r.e.) (finding a temporary injunction order insufficient under
Rule 683 and noting that “[t]he conclusion [in the order] that the situation is
harmful [to the plaintiff] is not a reason why injury will be suffered if the
interlocutory relief is not ordered”).  

This requirement for specificity is
mandatory and must be strictly followed.  InterFirst Bank San Felipe, N.A.
v. Paz Const. Co., 715 S.W.2d 640, 641 (Tex. 1986); City of Corpus
Christi v. Friends of the Coliseum, 311 S.W.3d 706, 708–09 (Tex.
App.—Corpus Christi 2010, no pet.); Monsanto Co., 25 S.W.3d at 788; Big
D Props., Inc. v. Foster, 2 S.W.3d 21, 22–23 (Tex. App.—Fort Worth 1999, no
pet.).  If an order fails to comply with these requirements, it is void and
should be dissolved.  InterFirst Bank, 715 S.W.2d at 641; City of
Corpus Christi, 311 S.W.3d at 708; Monsanto Co., 25 S.W.3d at 788.  

In the instant case, the injunction
provides that if the relief requested by Leibowitz is not granted:

a.    CFS will continue to
contact defense attorneys and insurance companies in Leibowitz’s cases and
threaten them with legal action if settlement monies are not paid directly to
CFS and such interference with the settlement of Leibowitz’s cases will cause
irreparable harm to Leibowitz and his clients;

 

b.    CFS will continue to
communicate to defense attorneys and insurance companies in Leibowitz’s cases
that they are required under the terms of the Security Agreement to disclose
confidential client information to CFS, when they have no such duty, and such
interference with the settlement of Leibowitz’s cases will cause irreparable
harm to Leibowitz and his clients; 

 

c.    CFS will continue to
communicate to defense attorneys and insurance companies in Leibowitz’s cases
that payment to Leibowitz’s clients will expose the Defendants to liability to
CFS, when no such liability exists, and such interference with the settlement
of Leibowitz’s cases will cause irreparable harm to Leibowitz and his clients;

 

d.    The continued
interference by CFS in Leibowitz’s cases has caused, and will continue to
cause, severe irreparable harm to Leibowitz’s business reputation, and impair
his ability to maintain his practice, the degree of which is difficult to
calculate and for which damages are no substitute; and 

 

e.    CFS will continue to
do all the foregoing, during the pendency of this case, which will render the
declaratory relief entered in this case ineffectual to protect Leibowitz and
his clients.

 

The injunction further
specifically states that if not granted, Counsel Financial will “continue to
file numerous actions against Leibowitz,” “continue the wrongful multiplication
of proceedings with the intent to thwart this Court’s jurisdiction, causing
havoc and a waste of valuable judicial resources,” “continue to harass and
force Leibowitz and his clients, to their great personal and financial burden,
and detriment, of having to defend themselves against vexatious proceedings,
and the resulting disruption of the judicial process, risking the loss of his
right to proceed to trial in Hidalgo County,” “continue to attempt to prevent
Leibowitz from fulfilling his contractual and legal obligations to his
clients,” and “alter the status quo and cause a miscarriage of justice.”

            We conclude this
language complies with the requirements of Rule 683 because it provides
specific reasons why irreparable injury will result in the absence of a
temporary injunction. The trial court has set forth underlying facts to support
its finding that irreparable injury will occur.  See, e.g., Robertson
Transps., 261 S.W.2d at 553 (concluding that an injunction was sufficiently
specific where it stated that the defendant “would interfere with the markets
established by the plaintiffs and would probably divert freight tonnage and
revenue from the plaintiff” and “that such interference with customers and
markets and diversion of freight tonnage and revenues would result in
irreparable and inestimable damage to the plaintiffs”); IAC, Ltd. v. Bell
Helicopter Textron, Inc., 160 S.W.3d 191, 200 (Tex. App.—Fort Worth 2005,
no pet.) (concluding that an injunction set forth sufficient reasons for its
issuance where it explicitly stated that the defendants had data entitled to
trade secret protection and were using that data to compete with the plaintiff
and the defendants’ product would be priced lower than the plaintiff’s which
would lead to “incalculable loss of business goodwill”); Khaledi v. H.K.
Global Trading, Ltd., 126 S.W.3d 273, 280 (Tex. App.––San Antonio 2003, no
pet.) (concluding that an injunction was sufficiently specific where it stated
that a business partner’s actions prevented other parties “from realizing the
significant loan values” in specified properties and significantly impaired
their ability to pay amounts owed under a promissory note and that their
business plan and ability to obtain financing on properties were “adversely
affected in a way that cannot be effectively measured in dollars”). 

            Accordingly,
we overrule Counsel Financial’s sixth issue. 

IV. 
Anti-Suit Injunction

By
its third and fourth issues, Counsel Financial attacks the anti-suit aspect of
the trial court’s temporary injunction.  Texas courts have the power, through
anti-suit injunctions, to prevent persons from proceeding with litigation filed
in other state courts.  Gannon v. Payne, 706 S.W.2d 304, 305 (Tex.
1986); London Mkt. Insurers v. Am. Home Assur. Co., 95 S.W.3d 702, 706
(Tex. App.—Corpus Christi 2003, no pet.).  When a suit is filed in a court of
competent jurisdiction, that court is entitled to proceed to judgment and may
protect its jurisdiction by enjoining the parties to a suit subsequently filed
in another court of this state.  Gannon, 706 S.W.2d at 305–06.  However,
this equitable power is to be exercised sparingly, and only in very special
circumstances.  London Mkt., 95 S.W.3d at 706.  The party seeking the
injunction has the burden to show that a clear equity demands the injunction.  Id. 
The applicant must demonstrate the potential for an irreparable miscarriage of
justice in order to obtain the anti-suit injunction.  Id.  “There are no
precise guidelines for judging the propriety of an anti-suit injunction; the
circumstances of each situation must be carefully examined to determine whether
the injunction is necessary to prevent an irreparable miscarriage of justice.” 
See AVCO Corp. v. Interstate Sw., Ltd., 145 S.W.3d 257, 262 (Tex.
App.—Houston [14th Dist.] 2004, no pet.) (citing Gannon, 706 S.W.2d at
307).

An anti-suit injunction is
appropriate in four instances:  (1) to address a threat to the court’s
jurisdiction; (2) to prevent the evasion of important public policy; (3) to
prevent a multiplicity of suits; or (4) to protect a party from vexatious or
harassing litigation. Gonzalez v. Reliant Energy, Inc., 159 S.W.3d 615,
623 (Tex. 2005) (citing Golden Rule Ins. Co. v. Harper, 925 S.W.2d 649,
651 (Tex. 1996)).  In addition to meeting the requirements necessary to obtain
an anti-suit injunction, the traditional prerequisites to injunctive relief
must be met by a party seeking an anti–suit injunction.  Cascos v. Cameron
County Atty. (In re Cascos), 319 S.W.3d 205, 221 (Tex. App.—Corpus Christi
2010, no pet.) (combined appeal & orig. proceeding); see Yarto, 287
S.W.3d at 88 n.8 (collecting cases).  

In reviewing the issuance of a
temporary anti-suit injunction, we utilize an abuse of discretion standard.  Christensen
v. Integrity Ins. Co., 719 S.W.2d 161, 163 (Tex. 1986); AVCO Corp.,
145 S.W.3d at 262.  A trial court abuses its discretion if its decision is
“arbitrary, unreasonable, and without reference to guiding principles.”  Am.
Int’l Specialty Lines Ins. Co. v. Triton Energy Ltd., 52 S.W.3d 337, 339
(Tex. App.—Dallas 2001, pet. dism’d w.o.j.) (quoting Goode v. Shoukfeh,
943 S.W.2d 441, 446 (Tex. 1997)).  In reviewing the trial court’s order, we
draw inferences from the evidence in the manner most favorable to the trial
court’s ruling.  Ortiz v. Legal Concierge, Inc., 263 S.W.3d 385, 390
(Tex. App.—Dallas 2008, pet. denied). 

            By its fourth issue, Counsel Financial asserts
that the trial court lacked jurisdiction to issue an anti-suit injunction.  We
disagree. Texas state courts have the power to restrain persons from proceeding
with suits filed in other courts of this state by granting an “anti-suit injunction,”
abating proceedings in a second forum.  Gannon, 706 S.W.2d at 305; Henry
v. McMichael (In re Henry), 274 S.W.3d 185, 189 (Tex. App.—Houston [1st
Dist.] 2008, pet. denied) (combined appeal & orig. proceeding).  In
applying Counsel Financial’s logic, no trial court would be able to obtain
subject matter jurisdiction to enjoin another court from litigating a matter
unless the enjoined court agreed to be enjoined.  This contention is not
supported by case law on anti-suit injunctions. See Harper, 925 S.W.2d
at 651; Christensen, 719 S.W.2d at 163; Gannon, 706 S.W.2d at
305; see also Graybar Elec. Co. v. Gonzalez (In re Graybar Elec. Co.),
Nos. 13-08-00073-CV, 13-08-00294-CV, 13-08-00333-CV, & 13-08-00341-CV, 2008
Tex. App. LEXIS 6868, at *20 (Tex. App.—Corpus Christi Aug. 26, 2008, no pet.)
(combined appeal & orig. proceeding) (mem. op.).  We overrule Counsel
Financial’s fourth issue.

In its third issue, Counsel
Financial contends the trial court abused its discretion by granting the anti-suit
temporary injunction because it does not come within any of the four bases
recognized by the Texas Supreme Court for anti-suit injunctions.  The trial
court’s order states, in relevant part:

4.         The Court
also finds that Leibowitz has established the existence of very special
circumstances and the potential for an irreparable miscarriage of justice to
warrant an anti–suit injunction, CFS has demonstrated that, if unrestrained,
CFS will:

 

a.    continue to file
numerous actions against Leibowitz in all the cases in which they believe
Leibowitz to have an interest and raise claims identical to claims in this
case;

 

b.    continue the wrongful
multiplication of proceedings with the intent to thwart this Court’s
jurisdiction, causing havoc and a waste of valuable judicial resources;

 

c.    continue to harass
and force Leibowitz and his clients, to their great personal and financial
burden, and detriment, of having to defend themselves against vexatious
proceedings, and the resulting disruption of the judicial process, risking the
loss of his right to proceed to trial in Hidalgo County;

 

d.    continue to attempt
to prevent Leibowitz from fulfilling his contractual and legal obligations to
his clients; and

 

e.    alter the status quo
and cause a miscarriage of justice.

 

The trial court’s order invokes all four rationales for
anti-suit injunctions.  Drawing inferences from the evidence in the manner most
favorable to the trial court’s ruling, we nevertheless conclude that the facts
underlying this case do not illustrate the “very special circumstances” and the
“clear equity” required for issuance of the injunction.  London Mkt., 95
S.W.3d at 706.  

The injunction states that Counsel
Financial’s interpleader was filed with the “intent to thwart this Court’s
jurisdiction” and that if the injunction was not issued, Leibowitz would be
“risking the loss of his right to proceed to trial in Hidalgo County.” While an
anti-suit injunction may be issued to protect the court’s jurisdiction, in the
instant case, the trial court actually lacked jurisdiction over the claims
pertaining to enforcement of the judgment.  Thus, the order was not necessary
to prevent a threat to the court’s jurisdiction.  

The anti-suit injunction also
contains language suggesting that it was necessary to prevent the evasion of
important public policy because Counsel Financial’s intervention was “causing
havoc and a waste of valuable judicial resources” and “the resulting disruption
of the judicial process.”  However, as stated previously, the judicial process
anticipates that issues regarding the enforcement of a judgment are devoted to
the court issuing the judgment.  Because the underlying court lacks jurisdiction
over the enforcement issues—and the Bexar County court has that jurisdiction—we
conclude that the injunction was not necessary to protect the judicial
process.    

The temporary injunction also
recites that it is necessary to prevent a multiplicity of suits.  We note that
first, Counsel Financial was not instituting new legal proceedings but was
instead intervening in existing litigation.  Second, Leibowitz has not pointed
out any case prohibiting a judgment creditor from intervening in an ongoing
action to collect a debt. Typically, the multiplicity argument supports
issuance of an anti–suit injunction when a party files numerous lawsuits to re-litigate
issues in different courts.  AVCO Corp., 145 S.W.3d at 266.

Finally, the injunction recites
that it was necessary because of the vexatious and harassing nature of Counsel
Financial’s intervention.  Texas cases that have approved injunctive relief to
protect a party from vexatious or harassing litigation have done so based on
evidence that a multiplicity of suits had been filed or on other evidence of
harassment.  See, e.g., Nguyen v. Intertex, Inc., 93 S.W.3d 288, 299
(Tex. App.—Houston [14th Dist.] 2002, no pet.) (concluding that an anti-suit
injunction was warranted where appellant filed at least five lawsuits relating
to the same judgment); Chandler v. Chandler, 991 S.W.2d 367, 403 (Tex.
App.—El Paso 1999, pet. denied) (concluding that an anti-suit injunction was
warranted where appellant filed ten lawsuits attempting to relitigate matters
which had been resolved against him and finding that the continuous barrage of
lawsuits against appellant’s former wife and all attorneys involved in case was
vexatious and meant to harass); In re Estate of Dilasky, 972 S.W.2d at 767–68
(concluding that an anti-suit injunction was warranted where appellant filed at
least seven lawsuits attempting to re-litigate same or similar issues); In
re Johnson, 961 S.W.2d 478, 482 (Tex. App.—Corpus Christi 1997, no pet.)
(concluding that an anti-suit injunction was warranted to protect the
prevailing party from the continued issuance of temporary orders blocking
enforcement of a judgment).  Our review of cases deeming litigation “vexatious
and harassing” leads us to conclude there is no justification for injunctive
relief on that ground based on the specific facts and pleadings herein.  Cf.
In re Johnson, 961 S.W.2d 478, 482 (Tex. App.—Corpus Christi 1997, orig. proceeding)
(“In the present case, the continued issuance of temporary orders blocking the
enforcement of Butron’s judgment against Cantu threatens the jurisdiction of
the 138th District Court, as well as this Court’s authority to settle the
validity of that judgment on appeal. It has created a multiplicity of suits and
has prevented Butron from obtaining satisfaction of his judgment. Accordingly,
we conclude that an injunction from this Court is appropriate to protect Butron
from further harassment of this nature.”).

In sum, we find no evidence in the
record showing that the anti-suit injunction was appropriate to prevent a
multiplicity of lawsuits, to provide protection from vexatious or harassing
litigation, or to prevent a threat to the court’s jurisdiction or the evasion
of important public policy.  We sustain Counsel Financial’s third issue and
hold that the trial court abused its discretion by issuing the anti–suit
injunction.

VII.  Conclusion

            Regarding
the anti-execution component of the injunction, the issues initially decided by
the New York judgment and which Liebowitz and Counsel Financial litigated in
Bexar County, and then appealed through the San Antonio Court of Appeals to the
Texas Supreme Court, are final, enforceable, and immune from collateral
attack.  Accordingly, the trial court lacked jurisdiction to entertain
Leibowitz’s pleas to enjoin execution and enforcement of those prior
decisions.  Regarding the anti-suit component of the injunction, the trial
court’s order was not void, but it erred in its analysis regarding the
application of the facts to the four bases for issuance of an injunction. 
Accordingly, we reverse the trial court’s order granting the temporary
injunction and remand this case to the trial court for further action in accordance
with this opinion.

 

 

________________________

GINA
M. BENAVIDES,

Justice

 

 

Delivered and filed the

1st day of July, 2011. 

 









[1]
The Honorable Linda Reyna Yañez, former Justice of this Court, heard this case
at oral argument but did not participate in this opinion because her term of
office expired on December 31, 2010.  See Tex. R. App. P. 41.1(a).  She was replaced on panel by Chief
Justice Rogelio Valdez.  

 





[2]
By separate appeal arising from the same trial court proceedings, Counsel
Financial sought to challenge an order of the trial court denying Counsel
Financial’s motion to transfer venue.  By opinion issued this same date, the
Court dismissed that appeal for want of jurisdiction.  See Counsel Fin.
Servs., L.L.C. v. Leibowitz, No. 13-10-00693-CV, 2011 Tex. App. LEXIS, *__
(Tex. App.—Corpus Christi June 30, 2011, no pet. h.) (mem. op.).  This Court also
previously denied an original proceeding arising from this same lawsuit.  See
In re Counsel Fin. Servs., L.L.C., No. 13–10–00157–CV, 2010 Tex. App. LEXIS
3112, at **1–3 (Tex. App.—Corpus Christi Apr. 27, 2010, orig. proceeding) (per
curiam mem. op.) (denying petition for writ of mandamus pertaining to venue on
grounds of ripeness).

 





[3]
Neither party has briefed the issue regarding whether such an agreement
violates rule 5.04 of the Texas Disciplinary Rules of Professional Conduct, and
accordingly, this opinion does not address that issue.  See Tex. Disciplinary R. Prof’l Conduct
5.04(a), reprinted in Tex. Gov’t
Code Ann., tit. 2, subtit. G, app. A (West Supp. 2010) (providing
generally that “[a] lawyer or law firm shall not share or promise to share
legal fees with a non-lawyer”).

 





[4]
The specific proceedings underlying the rendition of judgment in that
case are detailed by the San Antonio Court of Appeals in Counsel Financial
Services, L.L.C., v. Leibowitz, P.C., 31 S.W.3d 45 (Tex. App.—San Antonio
2010, pet. denied).  





[5]
To show a probable right of recovery, an
applicant need not establish that it will finally prevail in the litigation,
but it must, at the very least, present some evidence that, under the
applicable rules of law, tends to support its cause of action.  Camp v.
Shannon, 162 Tex. 515, 348 S.W.2d 517, 519 (Tex. 1961); INEOS Group Ltd.
v. Chevron Phillips Chem. Co., LP, 312 S.W.3d 843, 848 (Tex. App.—Houston [1st
Dist.] 2009, no pet.); IAC, Ltd. v. Bell Helicopter Textron, Inc., 160
S.W.3d 191, 197 (Tex. App.—Fort Worth 2005, no pet.).  A party proves
irreparable injury for injunction purposes by proving that damages would not
adequately compensate the injured party or cannot be measured by any certain
pecuniary standard.  Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex.
2002); Frequent Flyer Depot, Inc. v. Am. Airlines, Inc., 281 S.W.3d 215,
227 (Tex. App.—Fort Worth 2009, pet. denied).  However, an injunction is not
proper when the claimed injury is merely speculative.  Frequent Flyer Depot,
Inc., 281 S.W.3d at 228–29; Matrix Network, Inc. v. Ginn, 211 S.W.3d
944, 947–948 (Tex. App.—Dallas 2007, no pet.); Fox v. Tropical Warehouses,
Inc., 121 S.W.3d 853, 861 (Tex. App.—Fort Worth 2003, no pet.); Jordan
v. Landry’s Seafood Rest. Inc., 89 S.W.3d 737, 742 (Tex. App.—Houston [1st
Dist.] 2002, pet. denied) (op. on reh’g).  The party applying for a temporary
injunction has the burden of production, which is the burden of offering some
evidence that establishes the requisite elements of a temporary injunction.  See,
e.g., N. Cypress Med. Ctr. Operating Co. v. St. Laurent, 296 S.W.3d 171,
175, 177 (Tex. App.—Houston [14th Dist.] 2009, no pet.); Marketshare
Telecom, L.L.C. v. Ericsson, Inc., 198 S.W.3d 908, 925 (Tex. App.—Dallas
2006, no pet.); Dallas Anesthesiology Assocs., P.A. v. Tex. Anesthesia
Group, P.A., 190 S.W.3d 891, 897 (Tex. App.—Dallas 2006, no pet.).